## Case No. 7,687.

### In re KEMPER.

[1 MacA. Pat. Cas. 1; Cranch, Pat. Dec. 89.]

Circuit Court, District of Columbia. May, 1841.

PATENTABLE INVENTION — "DISCOVERY" DEFINED —COMMISSIONER'S POWERS—DOUBTFUL CASES—STOWAGE OF ICE.

[1. The word "discovery," as used in the constitution and patent laws, is synonymous with "invention"; and no discovery will entitle the discoverer to a patent which does not amount to the contrivance or production of something which did not exist before.]

[2. The discovery of a new effect of that which existed before is not the subject of a patent. Therefore, there can be no patent for placing blocks of ice edgewise, in storage, although the applicant may have been the first to discover that ice kept best in this position, and was the first to so place them with intent to take advantage thereof.]

[3. Under the sixth section of the act of 1836 (5 Stat. 119), the commissioner must decide, in the first place, whether the invention is new, and whether it is the proper subject of a patent; and, if he finds it is not the proper subject of a patent, he is bound to refuse it, although it may not be liable to the objections specified in section seven; namely, that it has not been previously invented or described, or has not been patented, etc.]

[4. The reason for the alleged rule that, "where the question is at all doubtful, the patent should be granted," ceased to exist when, by the act of 1839 (5 Stat. 353), the applicant was given a right of appeal to the judge in case the commissioner refused to grant him a patent.]

[This was an appeal by John F. Kemper from a decision of the commissioner of patents refusing to grant him a patent for an improvement in the manner of stowing ice.]

Thos. P. Jones, for appellant.
Examiner Chas. Keller, for commissioner.

CRANCH, Chief Judge. The petition of John F. Kemper sets forth that he "has invented certain improvements in the manner of constructing vessels for the stowing and carrying of ice, and also an improvement in the manner of stowing the same; and prays that letters-patent of the United States may be granted to him therefor, securing to him and his legal representatives an exclusive right in and to his said invention, agreeably to the provisions of the acts of congress in that case made and provided, he having paid thirty dollars into the treasury of the United States, and otherwise complied with the requirements of the said acts." In his specification, after describing his vessel and the improvements in the same, and certain matters to be attended to in the stowing of the ice, he says: "I have discovered that for the purpose of keeping ice for a great length of time it is necessary in stowing it to place all the pieces edgewise, as, when placed flatwise, small openings are formed through it by the percolation of water or otherwise, and that this injurious effect goes on increasing, and eventually producing a rapid destruction thereof; this I obviate by carefully packing all the blocks edgewise, when, as experience has abundantly shown, no such effect is produced. This mode of stowage applies not only to vessels. but also to ice-houses, and wherever ice is to be preserved." After stating what he disclaims and what he claims as his invention and improvements in constructing vessels for the transportation of ice, he says: "In the manner of stowing the ice, I claim the placing of the prepared blocks edgewise, in the manner and for the beneficial purpose herein set forth." No objection was made by the commissioner of patents to the grant of a patent for the novel construction of vessels for the transportation of ice as claimed by him; but the commissioner decided that the applicant was not entitled to receive a patent for the manner of stowing the ice by placing the blocks edgewise. From this decision he has appealed, according to the provisions of the eleventh section of the act of March 3d, 1839, and the seventh section of the act of July 4th, 1836, and has filed in the patent office his reasons of appeal, and paid the sum of twenty-five dollars to the credit of the patent fund. By the eleventh section of the act of March 3, 1839, c. 88 (Pamph. Ed.), the judge is to confine his revision to the points involved in the reasons of appeal; and the commissioner of patents is to lay before the judge the grounds of his decision touching the same points. The applicant claims a patent for his vessel and his manner of stowing ice in vessels and ice-houses as one invention, and pays thirty dollars as for one patent. The commissioner denies his right to a patent for his manner of stowing, but admits it for his improvement in the construction of his vessel.

The first and principal point involved in the reasons of appeal is whether the thing for which the patent is claimed is the invention or discovery of a new and useful art, or of a new improvement on an art, within the meaning of the constitution and laws of the United States respecting patents. The invention, if it be one, consists only in laying each block of ice on its narrowest side. Can that act be considered as a new thing invented or made? Was it never done before? If it has been done before, although the beneficial effect of so placing it, rather than on its broadest side. had not been discovered, it is not a new thing. The only thing new is the discovery of the beneficial effect, and that is the discovery of a thing which existed before; for if it is now true that ice so placed keeps longer than when differently placed, it was always true; and that it existed before, is shown in the specification, where it is said that the effect was discovered by experience. Much of the confusion of ideas upon this subject has arisen from the ambiguity of the words "discover" and "discovery" used in the constitution and the patent laws of the United States. In their primary and common sense they are not synonymous with "invent"

and "invention." Webster, in the last 8vo. edition of his dictionary, under the word "discover," says: "Discover differs from invent. We discover what before existed. We invent what did not before exist." And under the article "invention" he says: "Invention differs from discovery. Invention is applied to the contrivance and production of something that did not before exist. Discovery brings to light that which existed before, but which was not known." A discovery, in this sense, is not the subject of a patent; and it will be found, by a careful perusal of the constitution and laws of the United States upon the subject of patents for useful arts, &c., that it is not there used in this sense, but always as synonymous with invention. Thus the constitution (in chapter 4, art. 1, § 8, cl. 8), among the enumerated powers given to congress, says: "To promote the progress of science and useful arts by securing for limited times to authors and inventors the exclusive right to their respective writings and discoveries." There it is evident that the "discoveries," the use of which is to be secured, are the discoveries of inventors only. The applicant must invent, contrive, or produce something that did not exist before. A man may discover (i. e., may disclose) his invention; and for that discovery or disclosure he will be entitled to the exclusive use of his invention for a limited time.

In the first act of congress, "to promote the progress of useful arts," passed April 10th, 1790 [1 Stat. 109], the words invention and discovery are used synonymously throughout the whole act; and whether the application was for a patent for an invention or a discovery, it must be founded upon an invention or discovery of an useful art, &c., (or improvement therein,) not before known or used. The discovery of a new art that will justify a patent under that act can only be the invention of a new art, and the discovery of a new improvement. the invention of a new improvement. In every case. therefore, the applicant must be the inventor; and, by the constitution, none but inventors could be entitled to the monopoly. The next act was passed on the 21st of February, 1793 [1 Stat. 318]. entitled "An act to promote the progress of useful arts, and to repeal the act heretofore made for that purpose." By the first section of this act the applicant was to declare that he had invented (not discovered) a new and useful art, &c., or improvement, &c.; and the patent was to give a short description of the said invention or discovery. Here "discovery" is intended to be synonymous with "invention," for the claimant had alleged an invention only; and it is afterwards again in the same section called the said invention or discovery. The second section says that any person who shall have discovered an improvement and obtained a patent therefor shall not be at liberty to use "the original discovery nor shall the first inventor" (i. e., of the original

discovery which he had alleged to be his invention) "be at liberty to use the improvement." And a change of form or proportions was not to be "deemed a discovery." By the third section every inventor was to swear or affirm that he believed that he was "the true inventor or discoverer of the art." &c., and deliver a written description of his invention "by which it may be distinguished from other inventions." The fourth and fifth sections speak of inventors and inventions without saying anything of discoverers or discoveries. The sixth section, alluding to the same invention, calls it "his discovery," and speaks of original discovery and supposed discovery and the discovery of another man; and all these expressions are used in reference to what had been patented as inventions. The tenth section speaks of the true inventor or discoverer, and the eleventh section provides that every inventor shall pay thirty dollars before he presents his petition. The act of the 17th of April, 1800 [2 Stat. 37], only extends the privileges of the former act to aliens and to the legal representatives of inventors and discoverers, &c., and gives treble damages for violation of patent rights. The act of July 13, 1832 [4 Stat. 577], applies only to aliens. The next act is that of July 4th, 1836 [5 Stat. 117], entitled "An act to promote the progress of useful arts, and to repeal all acts and parts of acts heretofore made for that purpose." The first section speaks of "issuing patents for new and useful discoveries, inventions, and improvements" as part of the business of the commissioner of patents, whose office was therein created. In the fifth section the words invention and discovery, as used throughout. are synonymous. The sixth section. which declares for what a patent may issue, shows that the applicant must have "discovered or invented" some new art, &c., or improvement; and it is called "his discovery or invention thereof," and he is called "the inventor or discoverer." It then says: "But before any inventor shall receive a patent for any such new invention or discovery, he shall deliver a written description of his invention or discovery. The descriptions and drawings are to be 'signed by the inventor;' and he is to 'furnish a model of his invention;' and he is to make oath 'that he does verily believe that he is the original and first inventor or discoverer of the art, &c.. or improvement for which he solicits a patent, and that he does not know or believe that the same was ever before known or used.'" In the seventh section. wherever the word discovery or discoverer is coupled with invention or inventor, it is evident that it means the discovery or discoverer of something new—something that did not exist before—and therefore equivalent to invention and inventor. In the latter part of the section it speaks of the "science to which the alleged invention appertains. and of the part or parts of the invention which

he" (the commissioner) "considers as not entitled to be patented." The eighth section speaks of the right of "an original and true inventor to a patent for his invention," and says nothing of a discovery or discoverer. The twelfth section speaks only of invention —not discovery; yet it is evidently applicable to the former sections, which use the words "invention or discovery." The thirteenth section provides that where a patent shall be "invalid by reason of the patentee claiming in his specification as his own invention more than he had a right to claim as new," the commissioner "may cause a new patent to be issued to the said inventor for the same invention," &c. The same section afterwards speaks of a "description and specification of any new improvement of the original invention or discovery which shall have been invented or discovered by him" (the patentee) subsequent to the date of his patent. The fifteenth section specifies the special matter which may be given in evidence by the defendant under the general issue, among which is evidence tending to prove that the description and specification filed by the plaintiff does not contain the whole truth relative to his invention or discovery, or that the patentee was not the original and first inventor or discoverer of the thing patented, or of a substantial and material part thereof claimed as new, or that he had surreptitiously or unjustly obtained the patent for that which was in fact invented or discovered by another. It also speaks of "the invention or discovery for which the patent issued." It speaks also of the first inventor, without adding discoverer, and of the invention, without adding discovery. The sixteenth section speaks of the inventions patented, and, generally, of inventions, without adding discoveries. The seventeenth section speaks of injunctions to prevent the violation of the rights of any inventor, but says nothing of any discoverer; showing that the word inventor included all such discoverers as were contemplated by the legislature as within the protection of the patent laws. The eighteenth section provides "that whenever the patentee of an invention or discovery shall desire to extend his patent beyond the term of its limitation he may make application," &c.; and shall furnish a statement of "the ascertained value of the invention;" and having failed to obtain from the use and sale of his invention a reasonable remuneration, &c,. he may have the term extended. Here it is evident that the word "invention" was understood as equivalent to "invention and discovery" mentioned in the beginning of the section, and shows that the discovery contemplated was the discovery of something new, i. e., that did not exist before, and was used as synonymous with the word "invention." The remaining sections of the act do not use the word invention or discovery. The act of March 3d, 1839 (Pamph. Ed. p. 74. c. 88, § 7), says that every person who shall have

constructed any "newly-invented machine, manufacture, or composition of matter prior to the application by the inventor or discoverer for a patent shall be held to possess the right to use," &c., "the specific machine," &c., "so made," &c., "without liability therefor to the inventor or any other person interested in such invention; and no patent shall be held to be invalid by reason of such use," &c., "except on proof of abandonment of such invention to the public," &c. There is nothing further in this act tending to explain the meaning of the word "discovery," as used in the constitution and laws of the United States respecting patents for useful arts.

Upon consideration of the constitution and laws of the United States upon this subject, therefore, I think I may safely say that the claimant in this case can build no argument upon the supposed difference between a discovery and an invention; for no discovery will entitle the discoverer to a patent which does not in effect amount to the contrivance or production of something which did not exist before; or, in other words, to an invention. The patent claimed is for the placing of the prepared blocks edgewise, for the purpose set forth in the specification. The placing of blocks of ice edgewise is not the contrivance or production of anything which did not exist before. It is not an invention. It is not a discovery, because everybody knew before that blocks of ice might be placed upon their narrowest side; and it is asserted by the commissioner in the grounds of his decision, and not denied in argument, that blocks of ice have been so placed—whether by accident or design, is immaterial. The placing is not new. It is not an invention. The discovery of a new effect of that which existed before is not the subject of a patent. Blocks of ice have been placed on edge before the alleged discovery by the claimant. If they were so placed with intent to retard their dissolution. I presume the claimant would at once abandon his claim. But the intent can be no ground of a patent. The claimant may be the first who placed blocks of ice on edge with that intent. but this cannot justify a patent for doing that which was often done without that intent. In truth, the whole merit of the claimant is the discovery of a fact which existed long before, viz., that ice placed edgewise kept longer than when placed flatwise. This is a mere naked discovery, for which a patent cannot be granted. There is no invention—nothing contrived or produced which did not exist before.

It is, however, contended that although the discovery merely as such is not patentable, and although blocks of ice may have been often placed edgewise, yet "it will not be pretended that in vessels or in ice-houses ice had ever been stowed away upon the system adopted by Mr. Kemper." By "system," I suppose must have been meant "intent" or "purpose," for the placing the ice on edge cannot

of itself form a system. A system, as defined by Dr. Johnson, is "any complexure or combination of many things acting together; a scheme which reduces many things to regular dependence or co-operation; a scheme which unites many things in order." The patent in the present case is not asked for a system, but for the exclusive right to place blocks of ice on their narrowest side. The claim, therefore, obtains no support by calling it a "system," nor by calling it a "plan," as in the reasons of appeal, where it is asked, "Is the proposed plan unquestionably old?" What the writer meant by the word "plan" is not very obvious, but I presume he intended to refer to the placing of the ice edgewise, with the intent that it should thereby keep longer than if otherwise placed. He probably meant to include the intent with the act. But, as before observed, if the thing done be not new, the intent cannot entitle it to a patent.

It is admitted in argument on behalf of the appellant "that a discovery, taken abstractly, is not patentable;" but it is contended "that if the thing discovered be practically applied to produce a new and useful effect, the manner of attaining this end is patentable." Now, let us apply this rule or doctrine to the present case. The thing discovered is the beneficial effect of the position of the ice, not the position itself. How is this effect, which is the thing discovered, applied by the appellant to produce a new and useful effect, and what is the new effect thus to be produced by the effect discovered? Whatever it may be, it must be produced by means that are new— by some invention, some contrivance or production of something that did not before exist. The beneficial effect of the position of the ice is the retardation of its dissolution. No new and further effect is proposed. That retardation is the ultimate effect contemplated. No new means are intended to be used which can be the subject of a patent. A new effect from old means will not justify a patent for those old means. This case is therefore not within the rule or doctrine thus advanced to support it. The patent to Mr. Tudor for filling the interstices between the blocks of ice with some non-conducting substance is cited as a precedent for the present application. No judicial decision is produced affirming the validity of that patent, and it seems to me to rest upon very doubtful ground; but it is to be presumed that the commissioner who issued it was satisfied that the means used were a new invention. Mr. Dolland's patent for an improvement is also referred to, but there the means used were decided to be, as to him, a new invention, although Dr. Hall had, forty years before, constructed two telescopes upon the same principle, but had not pursued the matter and brought it into public use. That case has no analogy to the present.

In the reasons of appeal it is suggested that patents for processes or modes of procedure, in preserving animal and vegetable substances by means extremely simple, have been granted in England and in this country; but as they are not particularly brought to my notice, I cannot say how far they may be considered as precedents to justify the present application. I presume that in all of them something new was invented — something more than the discovery of a fact or a principle, and the application of such fact or principle to some useful purpose by old means, or by means not newly invented.

It is also suggested in the reasons of appeal that the commissioner is bound to issue a patent for the thing claimed, if on examination it shall not appear to him that the same had been invented or discovered by any other person in this country prior to the alleged invention or discovery thereof by the applicant, or that it had been patented or described, &c., as stated in the seventh section of the act of July 4th, 1836, and that the discovery in question is not placed in either of the conditions that would justify the refusing of a patent under the law. But the seventh section refers to the sixth, by which it appears that a patent is to be issued only to a person who has discovered or invented some new and useful art, &c., or some new and useful improvement on any art, &c. The commissioner, therefore, is to decide, in the first place, whether the invention is new, and whether it is the proper subject of a patent; and if he finds that it is not the proper subject of a patent, he is bound to refuse it, although it may not be liable to the particular objections specified in the seventh section. It is also said in the reasons of appeal that the professed rule of the office is, "that where the question is at all doubtful, the patent should be granted." This rule, I suppose, must have been adopted when the applicant had no remedy if the commissioner rejected his claim and the decision of the commissioner was affirmed by the board of examiners, under the seventh and sixteenth sections of the act of July 4th, 1836, which last-mentioned section gave the applicant a remedy by bill in equity only in case the patent was refused on the ground that it would interfere with an unexpired patent previously granted. In all other cases of refusal the applicant had no remedy, whereas, if the patent should be granted, its validity might be at all times questioned in the courts of law. It was reasonable, therefore, to adopt such a rule. But now, by the tenth section of the act of March 3d, 1839, if the patent be refused for any cause either by the commissioner or the judge the applicant may still establish his right to a patent by a bill in equity. The reason of the rule, therefore, fails, and I should not think myself bound by it if I thought this to be a case of doubt, which I do not. Every patent is a monopoly; and nothing can justify it but the natural right of property which a man has in the products of his own labor and ingenuity. With this ex-

ception, it is in derogation of common right, and it should be strictly confined to the case excepted.

Upon the whole, therefore, I am of opinion, and so decide, that the decision of the commissioner of patents that the applicant, John F. Kemper, was not entitled to receive a patent for the manner of stowing ice by placing the blocks edgewise was correct, and the same is hereby confirmed.